UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHRISTOPHER ANDERSON,

        Plaintiff,

-vs-                                           Case No. 5:03-cv-269-Oc-10GRJ

THE CITY OF CRYSTAL RIVER, FLORIDA
and JAMES FARLEY, Individually,

        Defendants.
_____

## **O R D E R**

This case is before the Court for consideration of the Defendant's Motion for Summary Judgment (Doc. 36), to which the Plaintiff has responded (Doc. 43). The motion is ripe for review and the Court concludes that it is due to be granted.

## **PROCEDURAL HISTORY**

This is an action under 42 U.S.C. § 1983 and Florida's Whistle-blower's Act, Fla. Stat. § 112.3187. The Plaintiff's amended complaint also contains a claim for rescission. Christopher Anderson, a former police officer for the police department in the City of Crystal River, Florida, asserts his claims against the City of Crystal River and its former Chief of Police, James Farley, in his individual capacity. On March 31, 2004, the case was held in abeyance and administratively closed (Doc. 20) pursuant to the stipulation of the parties that the facts and issues of the case are the same or almost identical to those of Ballard v. City of Crystal River, Case No.: 5:02-cv-240-Oc-10GRJ, in which the Court

granted summary judgment in favor of the City of Crystal River and Chief Farley. The Court's order abating the action provided that any party could move at any time to reopen the case upon the rendering of the Eleventh Circuit's decision in Plaintiff Ballard's appeal of the summary judgment order. The Eleventh Circuit subsequently affirmed the Court's order in all respects.[1] On February 3, 2005, Plaintiff Anderson moved to reopen his case, and the Court subsequently granted his motion, but only for the limited purpose of resolving the Plaintiff's rescission claim and the Plaintiff's claims under Florida's Whistle-blower's Act (Doc. 28).

## BACKGROUND

The Plaintiff contends that his claim arose under Florida's Whistle-blower's Act when he was forced to resign from his position as a police officer with the Crystal River Police Department shortly after he reported to Chief Farley that Lieutenant Mike Klyap was in possession of drug paraphernalia and had falsified a police report; that Chief Farley violated the City's nepotism policy by promoting Mike Klyap to Lieutenant and permitting him to supervise his wife, Sergeant Kat Klyap; and that Chief Farley violated the city's policy against soliciting votes and Florida law when Chief Farley held a mandatory employee meeting in October of 2001 and encouraged police department employees to support three particular city council candidates.

---

[1] Ballard v. City of Crystal River, Case No.: 5:02-cv-240-Oc-10GRJ, at Doc. 72 (Ballard v. City of Crystal River, No. 04-10268 (11th Cir. July 20, 2004) (unpublished decision)).

On November 13, 2001, after working at the Crystal River Police Department since 1995, the Plaintiff was terminated from his employment by Chief Farley for allegedly falsifying time cards, lying in an internal investigation, and for unsatisfactory job performance. The Plaintiff appealed his termination of employment to the City Manager, who upheld Chief Farley's decision to terminate the Plaintiff. Thereafter, the Plaintiff was represented by the Police Benevolence Association (PBA) through the arbitration process to further appeal his termination of employment.

On March 15, 2002, before completion of the arbitration process, the Plaintiff entered into a settlement agreement with the City.[2] Pursuant to the agreement, the City agreed to rescind its dismissal letter dated November 13, 2001, withdraw any allegations and findings of falsification and untruthfulness against the Plaintiff, and provide neutral employment information to any of the Plaintiff's prospective employers. The Plaintiff agreed to resign from his position with the police department, effective November 5, 2001. The Plaintiff further agreed to "fully finally release and discharge the City and its agents . . . from all claims, demands, actions, causes of action, suits, damages, losses and expenses of any and every nature whatsoever arising from any or all of the facts or circumstance which gave rise to this action . . ." The settlement agreement recited that the "parties enter into this Agreement freely and voluntarily and intend to be bound by the terms hereof."

---

[2] Doc. 43, Part 4, Exh. 19, Settlement Agreement; Doc. 37, Plaintiff's Deposition, pg. 56.

The Plaintiff testified that he ultimately settled his grievance against the City "[o]ut of fear of what they were going . . . to come up with."[3] Specifically, the Plaintiff was fearful that he would be subjected to criminal charges because Chief Farley told one of his PBA representatives that "on top of what we were dealing with at that time, the falsification of time sheets, he had other criminal cases that was [sic] going on that [the Plaintiff] was involved in that I would probably be arrested for."[4] The Plaintiff further testified that Chief Farley was confident that he could bring criminal charges against him, and that he believed Lieutenant Mike Klyap and Chief Farley "were capable of basically trumping up the charges."[5] The Plaintiff testified that although he knew he did nothing wrong, he "didn't want to go through the process of being arrested and transported down to the jail."[6]

After the Plaintiff signed the settlement agreement and after he was terminated, the Plaintiff learned that there were no criminal charges against him. Specifically, the Plaintiff testified that he learned from Detective Eddie McConnell while he was cleaning out his locker that "there was a case that they were working on that [the Plaintiff's] name came up in it but it turned out to be a guard from the jail that had actually taken money."[7] This

---

[3]   Doc. 37, Plaintiff's Deposition, pg. 49.

[4]   Id. at 47.

[5]   Id. at 47.

[6]   Id. at 50.

[7]   Id. at 48.

investigation is "what the Chief was referring to when he was threatening [the Plaintiff] with criminal prosecution."[8]

In addition to avoiding possible criminal charges against him, the Plaintiff explained that he also signed the settlement agreement

> to prevent the PBA from spending a lot of money of [sic] going through the process, we would just end it. There would be no paper work shone [sic]. It would just show that I had just resigned from my position from the police department. So at that point in time it would be easy on everybody if I just dropped the whole thing and went on and was able to get hired on by somebody else. I had qualifications. I had enough schooling. I knew I was qualified for any where I went to. So I didn't think that would be an issue.[9]

The Plaintiff testified that he has not spoken with anyone at the PBA since he signed the settlement agreement because he "was misrepresented when [he] was going through that process. [The Plaintiff] was a scapegoat to save Sergeant Ballard and Kellie Reese [two other police department employees who filed retaliation actions against the City]."[10]

Chief Farley testified that in late 2001 the department was made aware that the Plaintiff had been accused of receiving cash for appearing under a subpoena at an administrative hearing while he was also being paid by the City. If true, Chief Farley testified that this action would constitute a crime under Florida law. As such, Chief Farley

---

[8] Id. at 48.

[9] Id. at 53-54.

[10] Id. at 79-80.

directed Detective Eddie McConnell to investigate the matter.[11] During the initial stage of the investigation, on or about January 30, 2002, attorney Lee Meadows claimed that the Plaintiff demanded $20 in cash in exchange for testifying at an administrative hearing. However, on February 28, 2002, Detective McConnell learned that another officer with the sheriff's office may have been the individual who demanded the payment. Detective McConnell followed up with attorney Meadows on March 5, 2002, who stated that he may have been mistaken, and as a result, the investigation against the Plaintiff was discontinued. Chief Farley denied ever threatening the Plaintiff criminal charges. In fact, Chief Farley stated that he did not have direct communications with the Plaintiff regarding the proposed settlement.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."[12] As the Supreme Court

---

[11] See Doc. 37, Affidavit of James Farley, Exh. 8, Inter-department Memorandum from Detective McConnell Regarding the Plaintiff Allegedly Receiving Cash from an Attorney for Appearing under Subpoena on an Administrative Hearing While on Department Time.

[12] Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

held in Celotex Corp. v. Catrett, the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.[13] If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[14] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[15]

## DISCUSSION

### I. Rescission Claim

Generally, settlement agreements are enforceable under Florida law to further the policy of encouraging settlements.[16] However, the Plaintiff argues that this Court should set aside the settlement agreement and allow him to pursue his whistle-blower claim because he entered the agreement under duress. Specifically, the Plaintiff claims that he only signed the settlement agreement "because of the threats of criminal prosecution which were false." Upon reviewing the record, the Court concludes that the Plaintiff has failed to come forward with sufficient evidence to create a genuine issue of fact that he signed the

---

[13] 477 U.S. 317 (1986).

[14] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

[15] Celetex, 477 U.S. at 324.

[16] See Mazzoni Farms, Inc. v. E.I. DuPont Nemours and Co., 761 So.2d 306, 314 (Fla. 2000).

settlement agreement under duress, therefore summary judgment with respect to this claim is due to be granted.

"Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition."[17] "The law in the State of Florida is clear: a threat of criminal prosecution does not constitute duress and will not justify rescission of a legal instrument, where the threat to seek prosecution is legally justifiable."[18] The burden of proof to show duress is on the party asserting it.[19]

The Court concludes as a matter of law that the settlement agreement entered into by the parties is enforceable and should not be rescinded due to duress. First, Chief Farley was legally justified in investigating allegations by an attorney that the Plaintiff had demanded and accepted a cash payment to appear at an administrative hearing while he was on duty and being paid by the City.[20] These allegations, if true, would constitute a crime under Florida law.[21] Since Chief Farley was legally justified in investigating the

---

[17] Herald v. Hardin, 95 Fla. 889, 891 (Fla. 1928).

[18] Smith v. Paul Revere Life Ins. Co., 998 F.Supp. 1412, 1417-1418 (S.D. Fla. 1997); see also Scutti v. State Road Dept., 220 So.2d 628, 630 (Fla 4th DCA 1969).

[19] Corporacion Peruana de Aeropuertos y Aviacion Comercial v. Boy, 180 So.2d 503, 504 (Fla. 2d DCA 1965).

[20] There is no evidence to suggest that these allegations were simply concocted by Chief Farley to coerce the Plaintiff into signing the settlement agreement.

[21] It is unlawful under Florida law for public officials to seek or accept unauthorized
(continued...)

matter, it cannot be said that the Plaintiff entered into the settlement agreement under duress. Secondly, the record does not support the Plaintiff's claim that Chief Farley's alleged threat of unlawful criminal prosecution practically destroyed the free agency of the Plaintiff and caused him to do an act or make a contract not of his own volition. To the contrary, the record reveals that the Plaintiff thoughtfully considered his situation and entered into the settlement agreement because to do so would make it "easy on everybody," and so he could just move forward and secure employment elsewhere. Lastly, it does not even appear that Chief Farley, the individual who allegedly unlawfully threatened the Plaintiff with criminal prosecution, was a contracting party to the settlement agreement,[22] therefore the settlement agreement may not be set aside because the alleged duress emanated from someone other than one of the contracting parties.[23]

## II. Florida Whistle-blower's Act Claim

Since the settlement agreement entered into by the Parties' is enforceable, the Plaintiff's claim under Florida's Whistle-blower's Act is barred by the agreement. However, even if the settlement agreement was found to be unenforceable, the Plaintiff's whistle-

---

[21](...continued)
benefits in return for performance of official duties. See Fla. Stat. § 838.016(1).

[22] The signatories to the settlement agreement were the city manager, the city attorney, the Plaintiff, and the Plaintiff's attorney. See Doc. 37, Affidavit of James Farley, Exh. 7, Settlement Agreement.

[23] See Vitakis-Valchine v. Valchine, 793 So.2d 1094, 1096 (Fla. 4th DCA 2001) (holding that "[a]s a general rule under Florida law, a contract or settlement may not be set aside on the basis of duress or coercion unless the improper influence emanated from one of the contracting parties - the actions of a third party will not suffice").

blower claim is clearly barred by the 180-day statute of limitations period provided for under Florida's Whistle-blower's Act.[24] The Plaintiff knew or should have known that he was retaliated against by at least March 15, 2002, when he was allegedly forced to resign and enter into the settlement agreement, therefore he should have filed his whistle-blower claim by September of 2002, rather than filing his claim in July of 2003.

## CONCLUSION

Accordingly, upon due consideration, it is ordered that:

(1) the Defendant's Motion for Summary Judgment (Doc. 36) is GRANTED; and

(2) the Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file on this matter.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 18th day of May, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record

---

[24]   Fla. Stat. § 112.3187(8)(c); Alloca v. City of Coral Gables, 221 F.Supp.2d 1317, 1366 (S.D. Fla. 2002).